# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 4, 2013

## TONY ARNESS DEGRAFFREED v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Tipton County
### No. 6226      Joseph H. Walker, Judge

_____

### No. W2012-01426-CCA-R3-PC  - Filed June 18, 2013

_____

The petitioner, Tony Arness Degraffreed, appeals from the denial of his petition for post-conviction relief, wherein he challenged his Tipton County Circuit Court jury conviction of rape of a child. In this appeal, he contends that he was denied the effective assistance of counsel. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Richard McFall, Covington, Tennessee, for the appellant, Tony Arness Degraffreed.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Mike Dunavant, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Tipton County Circuit Court jury convicted the petitioner of one count of rape of a child, and the trial court imposed a sentence of 25 years to be served at 100 percent by operation of law. *See State v. Tony Arness Degraffreed*, No. W2010-00926-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, June 28, 2011). This court affirmed the conviction and sentence on direct appeal, *see id.*, and the supreme court denied the petitioner's application for permission to appeal, *see State v. Tony Arness Degraffreed*, No. W2010-00926-SC-R11-CD (Tenn. Oct. 18, 2011).

The proof adduced at the petitioner's trial established that on November 15,

2008, the petitioner asked his 11-year-old stepdaughter "to have sex with him." *Tony Arness Degraffreed*, slip op. at 2. She refused. On the following morning, however, the victim reported to her mother that the petitioner had "touched" her. *Id.* The victim's mother telephoned police. During a forensic interview, the victim stated that the petitioner got on top of her and "touched her private part with his private part." *Id.*, slip op. at 3. The victim also said, "'He did it before when my mom used to go to work at night. Then he would touch his private part with my private part. Sometimes some white liquidy stuff would come out of his private part.'" *Id.* A physical examination revealed "redness around the victim's hymen . . . and a tear at the top of the victim's hymenal tissue." *Id.* Microscopic examination of slides prepared from swabs of the victim's vagina revealed "the presence of a sperm." *Id.* In a statement to police, the petitioner admitted "touching [the victim] . . . rubbing on her private part" while he "was high off of weed." *Id.* The petitioner claimed that his "fingers went into her." *Id.* The defendant also admitted to another detective that he had penetrated the victim's vagina with his fingers and expressed a desire "to get some help." *Id.*, slip op. at 4. The victim testified, "He put his private up against mine and he was rubbing it." *Id.* The victim's testimony regarding the defendant's penetrating her vagina with his penis was equivocal.

The petitioner filed a timely petition for post-conviction relief on February 22, 2012, claiming that his conviction was based upon a coerced confession, that he was denied the effective assistance of counsel, and that newly discovered evidence undermined his conviction. The petitioner claimed that his trial counsel performed deficiently by failing to prepare a defense, failing to request a psychiatric examination, failing to obtain exculpatory deoxyribonucleic acid evidence, failing to file a motion to suppress his pretrial statements to police, and failing to ask certain questions of the victim on cross-examination. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, adding claims that counsel performed deficiently by failing to properly consult with the petitioner prior to trial, by failing to interview potential witnesses, by failing to adequately discuss discovery materials with the petitioner, by failing to properly investigate the case, and by failing to subpoena important witnesses.

At the July 6, 2012 evidentiary hearing, Tipton County Sheriff's Department Detective Sheri Wassel testified that she read only a portion of the admonition of rights and waiver of rights form to the petitioner before he signed it during their November 26, 2008 meeting. She said that the petitioner nevertheless placed his initials beside each of the five admonitions, indicating that he had read and understood each one, and signed and printed his name on the waiver of rights form. She recalled that the petitioner did not express any difficulties with reading or writing.

The petitioner testified that trial counsel did not respond to letters and failed

to visit him. The petitioner asserted that he met with trial counsel only once prior to trial and that trial counsel did not discuss discovery materials or potential defenses with him during their single meeting. The petitioner said that trial counsel failed to subpoena any witnesses and did not conduct any investigation into the case. He claimed that he had written to the trial judge to express his dissatisfaction prior to his trial, but neither trial counsel nor the trial judge responded "until a couple of days before" trial.

The petitioner claimed that he asked trial counsel to file a motion to suppress the statement he gave to Detective Pamela Ford on grounds "that it was a coerced, fabricated statement." When counsel did not file the requested motion, the petitioner filed a pro se motion to suppress the statement. He said that the trial court did not hear the motion. The petitioner maintained that the statement was the product of his incarceration and coercion from Detective Ford. He claimed that he ingested an "eight ball of cocaine," "a Oxycontin pill, a Xanax bar, and a Lortab" and then "smoked . . . a blunt of weed" before going to sleep and awoke to find Detective Ford holding a gun to his face. He said that the detective placed him under arrest, drove him to the police department, and badgered him for "like forever." He said that the detective told him that she would "make sure" that he received a 50-year sentence if he refused to confess but would "try to get [him] a plea for eight years or something" if he provided a confession. The petitioner acknowledged that he told Detective Ford that he had penetrated the victim's vagina with his finger, explaining,

> [S]he coerced me into saying that. And I didn't have no problem with letting her coerce me because I felt like if she tried to play some games with me at trial and tried not to give me this eight-year plea, I felt like [trial counsel] was – I thought he was going to be able to get the statement suppressed because I knew the statement was false. I knew the child would testify to the fact that I never stuck my finger in her.

The petitioner said that trial counsel never asked the victim whether the petitioner had penetrated her vagina with his finger.

The petitioner said that on November 26, 2008, Detective Wassel removed him from his cell for questioning. He denied asking to talk to the detective. The petitioner insisted that he told Detective Wassel that the statement he made to Detective Ford was fabricated.

During cross-examination, the petitioner acknowledged that he had no difficulty reading or writing and that he fully understood the admonition and waiver of rights form presented to him by Detective Wassel. He admitted that he had signed a similar form

provided to him by Detective Ford but insisted that he did so after Detective Ford had written the false statement. He said that he signed the form without reading it because Detective Ford promised him that "everything [is] going to be all right" and that he would be able to post bond. The petitioner maintained that he was drunk and high when he provided the statement but nevertheless agreed that he was thinking clearly because he had the forethought to contemplate having the statement suppressed at a later date. He said,

> [S]he was talking about giving me 50 years, and so I lied and made up the statement to, you know what I'm saying, so she could think I'm going along with her. And in back of my mind I said, Man she try to play me, I just have my attorney get the statement suppressed because it's a lie.

The petitioner said that trial counsel should have subpoenaed "the TBI agent" who "supposed to have been got the sperm or DNA sample." He added, "[I]f he would have investigated my case, he would have knew who to . . . subpoena."

Trial counsel testified that he filed a motion to suppress the video-recorded statements that the petitioner made to Detective Wassel and that the trial court heard and partially denied the motion on the day of trial. He admitted that the trial court did not have time to review the video recordings before making a ruling because the motion was filed late. He stated that he did not believe the court's failure to review the video affected the outcome. One of the statements, he said, "was completely suppressed."

Trial counsel testified that he did not file a motion to suppress the petitioner's statement to Detective Ford. He said that he considered seeking suppression on the basis of the petitioner's being impaired by drugs and alcohol when making the statement but that he did not do so when the witnesses the petitioner claimed would testify that he was drunk and high refused to get involved. As a result, he said, he thought that "something that stood as equal a chance of succeeding was impeaching Detective Ford about the circumstances" of the petitioner's confession. Counsel said that he did not believe that he should have insured that the petitioner's pro se motion to suppress was heard, explaining,

> I certainly didn't see grounds to suppress the statement, like I said, other than on the basis that I've said, and I couldn't find any witnesses that, in the number of witnesses that he identified to me, were willing to testify that he had been up all night drugging with them.

Counsel could not recall whether he had asked the victim whether the petitioner

penetrated her vagina with his finger but said that he did ask the victim whether the petitioner had penetrated her vagina with his penis, and she responded that he did not. Trial counsel said that he did not belabor cross-examination of the victim because he did not want to be "seen as beating up on a kid."

Counsel acknowledged that the report of forensic testing from the Tennessee Bureau of Investigation ("TBI") established that vaginal swabs and slides from the victim "failed to reveal the presence of semen." He said that he did not subpoena the forensic scientist who made the report because he believed that the State intended to call him as a witness. Trial counsel classified his failure to issue a subpoena "a mistake" and said that he had intended to impeach the medical testimony with the TBI report but was unable to do so because the report could not be admitted in the absence of its creator.

Counsel said that Detective Ford testified that she had sent the slides to the TBI for testing and that she had received the results of the TBI examination. He testified that it was his hope that the jury would infer from the absence of the results from trial that they were beneficial to the petitioner.

Trial counsel testified that he met with the petitioner prior to trial on at least three occasions and that on one of those occasions, he watched the video recording of the petitioner's statement with the petitioner. Counsel acknowledged that the trial court addressed the petitioner's pro se motion to suppress in a blanket order granting in part and denying in part the motions to suppress the various statements. He said that the petitioner did not provide him with the names of any witnesses to testify at trial.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In a written order, the post-conviction court denied relief, concluding that the petitioner failed to establish that he was denied the effective assistance of counsel. The court accredited counsel's testimony that he met with the petitioner on several occasions, obtained the services of an investigator, and adequately investigated the case. The court noted that, despite the petitioner's claims to the contrary, counsel did file motions to suppress two of his statements with some success. The court acknowledged that trial counsel did not subpoena the TBI scientist who performed forensic testing on the victim's vaginal swabs, thereby prohibiting use of the potentially exculpatory report, but found that because emission of semen is not required for a conviction of rape of a child, counsel's failure did not affect the outcome of the trial.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to adequately communicate with him, by failing to timely file motions to suppress the petitioner's pretrial

statements, and by failing to subpoena the TBI forensic scientist who performed forensic testing of the victim's vaginal swabs and slides.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner claims that trial counsel failed to adequately communicate with him prior to trial as evidenced by the fact that counsel did not recall that the petitioner had filed a pro se motion to suppress the statement he provided to Detective Ford. He claims that trial counsel should have set the pro se motion for hearing. Counsel testified, however, that he would not have set the motion for hearing because he did not believe there were

meritorious grounds for suppression. Counsel's decision was fully supported by the petitioner's testimony at the evidentiary hearing. Although the petitioner claimed that he had ingested cocaine, Xanax, Oxycontin, and marijuana before giving the statement, he repeatedly acknowledged that he intentionally provided a "false" statement to Detective Ford with the intent to later seek suppression of the statement. The petitioner has failed to establish how more meetings or further communication with trial counsel would have affected his trial. The petitioner is not entitled to relief on this ground.

The petitioner also claims that the motions to suppress filed by trial counsel were late and that the untimely filing "precluded any pretrial suppression hearing from ever being conducted and prevented the videos from being edited and/or suppressed." The record, however, establishes that, despite the lateness of the motions, the trial court heard them and ordered one of the video-recorded statements suppressed on constitutional grounds. The petitioner is not entitled to relief on this ground.

Although trial counsel acknowledged that he should have subpoenaed the TBI scientist, the record establishes that his failure to do so did not affect the outcome of the petitioner's trial. As the post-conviction court observed, the emission of semen is not required for a conviction of rape of a child. The proof against the petitioner was overwhelming. We cannot say that the addition of the report noting the absence of semen would have resulted in a different outcome. As such, the petitioner has failed to establish that counsel's mistake inured to his prejudice.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE